UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLAMEN VLADIMIROV TRIFONOV,<br><br>                Petitioner,<br><br>      v.<br><br>JACK FOX, et al.,<br><br>                Respondents. | CASE NO. C14-0366JLR<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

This matter comes before the court on the Report and Recommendation ("R&R") of United States Magistrate Judge Mary Alice Theiler (R&R (Dkt. # 21)) and petitioner Plamen Vladimirov Trifonov's objections thereto (Objections (Dkt. # 27)). This is an extradition case. Mr. Trifonov filed this habeas petition as a means of obtaining judicial review of Magistrate Judge Brian A. Tsuchida's order finding that Mr. Trifonov could be extradited to his home country of Bulgaria. (Petition (Dkt. # 1).) Having carefully

ORDER- 1

reviewed all of the foregoing, along with all other relevant documents and the governing law, the court ADOPTS the Report and Recommendation (Dkt. # 21) and DISMISSES Mr. Trifonov's petition with prejudice.[1]

## I. BACKGROUND

In May, 2013, the Bulgarian government requested the extradition of Mr. Trifonov to Bulgaria. (R&R at 6.) Mr. Trifonov was residing in the United States at the time, and the Bulgarian government delivered an extradition packet to the United States Department of State asking that he be returned to Bulgaria to serve a sentence for two criminal convictions. (*Id.*) The Bulgarian government's request was made pursuant to a treaty between the United States and Bulgaria that is designed to facilitate extradition of wanted criminals who have fled one country for the other. (Treaty (Dkt. # 10) at 23.)

Mr. Trifonov was convicted in Bulgaria of two crimes he allegedly committed in the 1990's. (R&R at 3-6.) In July, 1992, Mr. Trifonov arrived at a border check point in Bulgaria driving a tractor truck and semi-trailer. (*Id.* at 3.) He told customs officials that the truck contained metal scrap. (*Id.*) However, during the customs officials' inspection,

---

[1] Mr. Trifonov has also mailed a letter to the court requesting that a specific federal public defender be appointed to take over his case. At present, Mr. Trifonov is represented by private counsel. (*See* Dkt.) In general, there is no right to appointed counsel in a habeas case, *see McCleskey v. Zant*, 499 U.S. 467, 495 (1991), or in an extradition proceeding, *Morales v. U.S. Marshals*, No. 1:11-cv-00807 AWI MJS HC, 2011 WL 5299254, at *4 (E.D. Cal. Nov. 2, 2011). The court may appoint counsel at its discretion, but only if "the interests of justice so require." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). In deciding whether to appoint counsel, the court must evaluate "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* Because Mr. Trifonov is presently represented by counsel, the court denies his request at this time without prejudice to renewing his request if his current attorney withdraws, representation remains necessary after this order, he is able to demonstrate financial need, and he is able to demonstrate that the interests of justice require the appointment of counsel.

the canvas sides of the semi-trailer split open and 24 men jumped out. (*Id.*) All of them were foreign nationals without identity documents. (*Id.*) In July, 1995, Mr. Trifonov loaded another truck and trailer with plastics and crossed the Bulgarian border into Romania. (*Id.* at 4.) At some point, he left the main road and met a group of 40 Sri Lankan nationals who were following a well-developed channel for illegal emigration to Germany. (*Id.*) Mr. Trifonov opened the doors to his truck and trailer and 20 Sri Lankan nationals got into each. (*Id.*) Mr. Trifonov proceeded to drive the truck across the Hungarian border. (*Id.*) Over the course of the night, 18 of the Sri Lankan nationals suffocated and died in the truck. (*Id.*) Mr. Trifonov took all of his documents from the cab of the truck, fled the scene, and hitchhiked back to Bulgaria. (*Id.*)

In September 2002, a Bulgarian court found Mr. Trifonov guilty of two different crimes in connection with these acts. Specifically, the court—called the Sofia City Court—found Mr. Trifonov guilty of violating Articles 279 and 343 of the Bulgarian Criminal Code. (*Id.*) Article 279 criminalizes entering or exiting the Bulgarian border without a permit or at the wrong place. (*Id.* at 4-5.) Article 343, along with Article 342, criminalizes violating traffic rules and causing death or bodily injury thereby. (*Id.* at 5.) The court sentenced Mr. Trifonov to eight years imprisonment but deducted a year and a half for time served. (*Id.* at 6.)

Mr. Trifonov has been detained by the United States government in connection with this extradition since December 16, 2013. (*Id.* at 6-7.) He had an initial appearance in court on October 11, 2013, and hearings on detention and extradition were scheduled for November 1, 2013. (*Id.* at 7.) Mr. Trifonov twice moved for, and was granted,

ORDER- 3

1 extensions of time for these hearings, but was finally detained after a detention hearing
2 on December 16, 2013. (*Id.*) His extradition hearing was continued until January 27,
3 2014, at his request. (*Id.*) He continued his extradition hearing one more time, and the
4 hearing was finally held on February 24, 2014. (*Id.*)

5   At the hearing, Magistrate Judge Tsuchida certified Mr. Trifonov's extradition.
6 (*Id.*) Magistrate Judge Tsuchida found that Mr. Trifonov was extraditable, rejecting Mr.
7 Trifonov's various arguments to the contrary. (*Id.*) However, Magistrate Judge Tsuchida
8 temporarily stayed Mr. Trifonov's extradition so that Mr. Trifonov could file a petition
9 for writ of habeas corpus challenging Magistrate Judge Tsuchida's conclusions. (*Id.*)
10 That petition is now before the court. (*See* Petition.)

11   Magistrate Judge Theiler considered the habeas petition and recommended that it
12 be denied. (*See generally* R&R.) Magistrate Judge Theiler issued a 27-page R&R
13 recommending that the court reject Mr. Trifonov's arguments for habeas relief and
14 dismiss the petition, thus allowing Mr. Trifonov to be extradited. (*See id.* at 27.) Mr.
15 Trifonov also filed a motion for class certification, seeking to obtain relief related to his
16 conditions of confinement on behalf of himself and a putative class of fellow prisoners.
17 (Mot. to Certify (Dkt. # 19).) Magistrate Judge Theiler also recommended denying that
18 motion. (R&R at 27.) Mr. Trifonov timely objected to the R&R. (*See* Objections.)

19       **II. STANDARD OF REVIEW**

20   A district court has jurisdiction to review a Magistrate Judge's report and
21 recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must
22 determine de novo any part of the magistrate judge's disposition that has been properly

objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *Id.*

### III. DISCUSSION

Extradition is at its core an executive action, but it requires at least one layer of judicial review. *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). Extradition is a "diplomatic process" that is initiated at the request of a foreign nation and is first considered by the State Department. *Id.* Once the State Department decides to take action on the request, it must file a complaint in federal district court and participate in an extradition hearing. *Id.* At the hearing, a judge or magistrate judge must determine that the crime for which extradition is requested is an extraditable crime and there is probable cause to sustain the charge. *Id.* If so, the reviewing court must certify the extradition. *Id.*

A habeas petition is the sole avenue available to challenge an order certifying extradition. *Id.* The court's habeas review is limited to determining whether (1) the extradition judge had jurisdiction to conduct the proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the extradition treaty was in full force and effect; (4) the crime at issue fell within the terms of the treaty; and (5) there was competent legal

ORDER- 5

evidence to support a finding of extraditability. *Id.* Mr. Trifonov does not contest prongs (1), (2), and (3), focusing instead on prongs (4) and (5). (*See* R&R at 8.) Magistrate Judge Theiler rejected Mr. Trifonov's prong (4) and (5) arguments.

Mr. Trifonov raises five objections to Magistrate Judge Theiler's R&R. In general, the R&R deals with the issues in this case in a thorough, comprehensive manner. Magistrate Judge Theiler's analysis is complete and persuasive, and the court adopts it in its entirety as if fully set forth herein. Further, most of Mr. Trifonov's objections merely restate arguments made in his habeas petition that are fully addressed by the R&R. Nevertheless, the court addresses Mr. Trifonov's objections below.

First, Mr. Trifonov argues that evidence at his extradition hearing was not properly authenticated. (Objections at 2.) As a general matter, the Federal Rules of Evidence do not apply in extradition hearings, and the only requirement for evidence is that it be authenticated (unless the relevant treaty provides otherwise). *Manta*, 518 F.3d at 1146. Further, the treaty at issue here provides that documents may be authenticated by the seal of the Ministry of Justice or Foreign Affairs of the state requesting extradition. (Treaty at 33.) Mr. Trifonov contests the authentication of documents contained in his extradition packet, which were admitted at his extradition hearing and which he contends were never authenticated. (Objections at 2-6.) Mr. Trifonov is mistaken. The extradition packet contains a cover letter authenticating the documents in the extradition packet in direct compliance with the terms of the treaty. (*See* Martin Decl. (Dkt. # 10) at 3-5.) Mr. Trifonov's arguments to the contrary are not persuasive in light of the Bulgarian government's compliance with the treaty. Thus, for the reasons explained in detail in the

R&R, the evidence in question was properly authenticated and the court rejects Mr. Trifonov's arguments on this issue. (*See* R&R at 9-11.)

Mr. Trifonov's second and third objections relate to the Bulgarian government's technical compliance with the extradition treaty. (Objections at 6-8.) Mr. Trifonov asserts that the Bulgarian government did not include all necessary items in his extradition packet—specifically the text of the laws under which he was convicted and the length of time remaining on his sentence. (*Id.*) However, as Magistrate Judge Theiler pointed out, the text of the Bulgarian laws appears to have been included in the extradition packet (*see* Dkt. # 10 at 61-63) and was in any event introduced at the extradition hearing by Mr. Trifonov and included in the Sofia Appellate Court's opinion on Mr. Trifonov's case (R&R at 19). As for the length of time remaining on Mr. Trifonov's sentence, Mr. Trifonov either overlooks or ignores the fact that this information appears in several different forms in the extradition packet. (*See* R&R at 19-20; Dkt. # 10 at 52, 65-79.) Thus, both of Mr. Trifonov's arguments are baseless. Perhaps more importantly, Mr. Trifonov points to no authority for his assertion that any supposed failure to comply with the technical aspects of the treaty entitles him to habeas relief. Nor does he demonstrate that any of the errors he asserts in any way prejudiced him or were anything other than harmless. Magistrate Judge Theiler's analysis of these issues is thorough and correct, and the court rejects Mr. Trifonov's arguments to the contrary.

Mr. Trifonov's fourth objection addresses the question of "dual criminality." (Objections at 8.) Dual criminality is a common feature of extradition treaties that, in

essence, requires that extradition be based on an act that would be illegal in both the extraditing country and the country requesting extradition. *Manta*, 518 F.3d at 1141. Dual criminality exists if the "essential character" of the acts criminalized by the laws of each country are "substantially analogous." *Id.* The crimes do not need to be an exact match in terms of either scope of liability or constituent elements. *Id.*

Here, Magistrate Judge Theiler agreed with Magistrate Judge Tsuchida's finding that there was dual criminality for both of Mr. Trifonov's Bulgarian crimes. (R&R at 14-18.) Magistrate Judges Theiler and Tsuchida concluded that the 1992 border-crossing violation was sufficiently similar to a violation of 18 U.S.C. § 1001—making false statements in a federal matter—and that the 1995 suffocation incident that resulted in the deaths of 18 people was sufficiently similar to both vehicular homicide and manslaughter in the second degree to satisfy dual criminality. (*Id.*) In light of the case law on this matter and Magistrate Judge Theiler's R&R, the court is persuaded that both of these conclusions are correct. (*Id.*) However, even if Magistrate Judges Theiler and Tsuchida were incorrect with respect to the 1992 conviction (which the court finds to be a closer call than the 1995 conviction), they are not incorrect with respect to the 1995 conviction. There can be little doubt that this conviction satisfies the dual criminality requirement and therefore constitutes an extraditable offense. As such, any potential error with

respect to the 1992 conviction (and the court finds none) does not raise an adequate ground for habeas relief.[2]

Mr. Trifonov's fifth objection asserts that his "provisional arrest" was unconstitutional. (Objections at 11-12.) He argues that because his arrest was "provisional" under the extradition treaty, it needed to be supported by probable cause and needed to end after 60 days. (*See* R&R at 21-22.) Magistrate Judge Theiler correctly pointed out that Mr. Trifonov's arrest was not a "provisional arrest" as that term is understood under the extradition treaty because provisional arrests precede any extradition request, and Mr. Trifonov was not arrested until after Bulgaria's extradition request was filed. (*Id.*) This reasoning is correct. Mr. Trifonov argues that the arrest was, in fact, provisional because it is referred to as such at several places in the record. (Objections at 11-12.) This does not change the legal characterization and effect of the arrest. The fact remains that, as Magistrate Theiler correctly concluded, the arrest was not provisional. Thus, the court rejects Mr. Trifonov's fifth and final objection.

Finally, the court has conducted a de novo review of all the issues to which Mr. Trifonov does not object; having conducted this independent review, the court rejects the

---

[2] The court also rejects Mr. Trifonov's argument that the dual criminality analysis is the same as the "categorical analysis" used in other areas of the law. (*See* Objections at 8-9 (citing *Descamps v. United States*, 133 S. Ct. 2276 (2013)).) It plainly is not, and *Descamps* does not apply to the dual criminality analysis because, among other reasons, dual criminality is not an "elements-based" inquiry. *See, e.g.*, *Clarey v. Gregg*, 138 F.3d 764, 766 (9th Cir. 1998).

arguments in Mr. Trifonov's habeas petition for the same reasons as Magistrate Judge Theiler.[3]

## IV. CONCLUSION

For the foregoing reasons, the court hereby ORDERS as follows:

(1) The court ADOPTS the Report and Recommendation (Dkt. # 21) in its entirety;

(2) The court DISMISSES Mr. Trifonov's habeas petition (Dkt. # 1); and

(3) The court DIRECTS the Clerk to send copies of this Order to Petitioner, to counsel for respondent, and to Magistrate Judge Theiler.

Dated this 28th day of July, 2014.

JAMES L. ROBART
United States District Judge

---

[3] A certificate of appealability is not necessary in this case. *Lindstrom v. Graber*, 203 F.3d 470, 473 (7th Cir. 2000).